UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-09-0610 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT HAWLEY'S MOTION TO SUPPRESS** |
| SHARON ROSE HAWLEY, | **(Docket Nos. 8, 10)** |
| Defendant. | |

Defendant Sharon Hawley is charged with violation of California Vehicle Code § 23152(a) and (b). In particular, it is alleged she was under the influence of alcohol while operating a car which was involved in an automobile accident occurring within the parking lot of the San Francisco Veteran Affairs Medical Center where she is employed.

Defendant brings this motion to suppress evidence on two grounds: (1) that she was not legally arrested because the arresting officers did not have probably cause to believe she committed a public offense in the officer's presence, and (2) she was not timely advised of her Miranda rights upon arrest.

With respect to the argument that the accident did not occur within the presence of the arresting officers and hence the arrest was per se unlawful, the Government properly points out that California Vehicle Code § 40300.5 states that:

> [A] peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage . . . when any of the following exists: (a) The person is involved in a traffic accident.

Thus, under the circumstances of the instant case, an arrest may properly be made even if the violation of driving under the influence did not occur in the presence of the arresting officer. The critical question, instead is whether there was, at the time of the arrest, reasonable cause to believe Defendant had committed the charged violations. That question, as well as the claim that Defendant's Miranda rights were violated, turns on the determination of when an arrest occurred. While the Government contends Defendant was not arrested until after she had failed the field sobriety tests, failed the preliminary alcohol screening test, and admitted driving the subject vehicle, and that her initial detention prior thereto was only an investigatory stop which only required reasonable suspicion, not full probable cause. Defendant contends on the other hand that she was arrested when the officers first seized and detained her. Accordingly, the motion hinges on whether Hawley was seized at the point she was escorted down the hall to the VA Police Headquarters prior to the failed sobriety tests and preliminary alcohol screening test, and if so, whether it was an investigatory stop or a full custodial arrest. This Court finds that it was a seizure which amounted to an investigatory stop which required neither full probable cause or a Miranda warning.

**I.   DISCUSSION**

A.   There was a Seizure

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A seizure is not automatically found each time a police officer approaches an individual and asks questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Indeed, no seizure has taken place so long as a reasonable person would feel free "to disregard the police and go about his business." *California v. Hodari*, 499 U.S. 621, 628 (1991). Once the encounter loses its consensual nature, the Fourth Amendment is triggered. *Id.* To measure the consensual nature, the courts have found that "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick*, 501 U.S. at 434 quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).

In this case, Ms. Hawley was not free to leave when the police officers Guardiancic and Cowin entered the room and escorted her to the VA police headquarters. They informed her that they were conducting a criminal investigation and asked her to accompany them. When it appeared that she would not comply, they took hold of her biceps and guided her down the hall. At this point, a reasonable person would not have felt free to leave. Moreover, the officers demonstrated their authority by asserting that she was under criminal investigation and by using physical force to guide her to the police headquarters.

B. The Seizure was an Investigatory Detention and not a Full Custodial Arrest

1. Legal Standard

There is no "bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002) quoting *U.S. v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988). Rather, the determination is a fact intensive inquiry. *Gallegos*, 308 F.3d at 991 citing *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). Making the determination of whether the seizure was a stop or an arrest "may in some instances create difficult line-drawing problems." *U.S. v. Ricardo D.*, 912 F.2d 337, 339-40 (9th Cir. 1990).

This difficult test is "guided by the general Fourth Amendment requirement of reasonableness." *Gallegos*, 308 F.3d at 991. The Fourth Amendment requires the court to look at the totality of the circumstances and consider 1) the intrusiveness of the stop, which includes the aggressiveness of the police methods, and 2) the justification for the use of such tactics. *Washington v. Lambert*, 98 F.3d at 1185. The determination is essentially an evaluation of "not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances." *Id.*

An investigative detention must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). The methods used during the stop should be the "least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.*

United States District Court
For the Northern District of California

### 2. Evaluating the Intrusiveness of the Seizure

Although there is no bright line test for evaluating whether a stop has become an arrest, there are certain factors that the court may look at in making its determination. *Washington v. Lambert*, 98 F.3d at 1188-90 (listing several different factors that courts may consider and how each factor affects the analysis).

The transportation of a suspect is considered in determining whether the stop became an arrest. "[T]he police may move a suspect without exceeding the bounds of an investigative detention when it is a reasonable means of achieving the legitimate goals of the detention 'given the specific circumstances of the case.'" *U.S. v. Charley*, 396 F.3d 1074 (9th Cir. 2005) quoting *Gallegos*, 308 F.3d at 991 (where the officer transported the suspect to her home in order to investigate the welfare of her children which she claimed she had killed, transporting her to check on the children was for investigative purposes and was not an arrest).

Additionally, reasons of safety or security may justify the transportation of a suspect during a stop, but absent these justifications, the stop may ripen into an arrest. *Florida v. Royer*, 460 U.S. at 504 (finding an arrest when the officers transported the suspect 40 feet to a private room without any cause to believe the suspect was a danger or flight risk). The court may look to the suspect's actions in evaluating whether the officer's actions were justified; where a suspect is complying with all orders and there is no reason to believe he is armed, then transporting the suspect to *e.g.*, a patrol car or other location may be deemed excessive and thus constitutes an arrest. *U.S. v. Ricardo D.*, 912 F.2d 337, 340 (9th Cir. 1990) (finding there was an arrest where the suspect did not try to run away and complied with all of the officers' orders but was nonetheless transported to the police patrol car and held within the car).

The length or duration of a detention is another factor to consider. *Washington v. Lambert*, 98 F.3d at 1189 n. 11. In *Gallegos*, ordering the suspect from his car at gunpoint, handcuffing him, transporting him back to the scene of the incident, and holding him for 45 minutes did not constitute an arrest. 308 F.3d 987, 991 (9th Cir. 2002). Although the suspect was held for 45 minutes to an hour, the Supreme Court has held there is "no rigid time limitation on *Terry* stops." *Id.* at 992 quoting *U.S. v. Sharpe*, 470 U.S. 675, 685 (1985). The police stopped Gallegos because they

4

thought he was an individual who had been attempting to enter someone's home by force. *Id.* The officers held him long enough to escort him to the scene of the crime to confirm identification. *Id.* The length of the stop was not unreasonable because they were diligently carrying out their investigation and "especially since he was neither handcuffed nor in the patrol car the whole time." *Id.*

The use of handcuffs is another factor and its use "substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop." *Washington v. Lambert*, 98 F.3d at 1188 quoting *U.S. v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982). The use of handcuffs will weigh in favor of an arrest where the suspect has complied with the officer's orders and has already been frisked or the officer already knows that the suspect does not pose a threat. *U.S. v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990). The degree of restraint imposed on a suspect must be justified; reasonable suspicion of a crime without suspicion of danger or more is insufficient. *Id.* at 825 (where the police had suspicion to believe the suspect was involved in a drug transaction, it still did not justify the degree of restraint imposed).

However, the use of handcuffs does not always result in an arrest, for example there was no arrest in *U.S. v. Nava*, where the defendant was handcuffed and led to a security office and held there while his truck was searched. 363 F.3d 942, 943 (9th Cir. 2004). The officer informed Nava that he was being handcuffed for reasons of safety and security, and then escorted him to the security office. *Id.* Upon arrival at the office, the handcuffs were removed and Nava waited in the office while the other officers searched his truck. *Id.* It was reasonable to handcuff him while escorting him to the office to ensure that Nava would not be a danger to the officers or a flight risk. *Id.* at 946.

3. <u>The Police Methods Employed on Ms. Hawley were Justified</u>

It was reasonable under the circumstances for the officers to escort Defendant down the hall to the VA Police Headquarters because the initial room was too small to perform a field sobriety test and because the Preliminary Alcohol Screening Device was located at the police headquarters. She was initially uncooperative and thus had to be escorted. No guns or handcuffs were used, the officers limited their restraint to guiding her by the arm. They held her arms only long enough to escort her to the station and conduct the appropriate investigative tests. The investigative detention

5

was relatively short in length, long enough to escort Defendant to the police headquarters which was not far away and to conduct the necessary investigation.

Under the case law discussed above, the detention did not constitute an arrest. It was "temporary and last[ed] no longer than [was] necessary to effectuate the purpose of the stop" -- to determine whether Defendant was under the influence. *Florida v. Reyes*, *supra*, 460 U.S. at 500.

C.   The Investigatory Stop was Constitutional

Investigatory stops are justifiable under the Fourth Amendment if the officer has reasonable suspicion that a person has committed or is about to commit a crime. *Royer*, 460 U.S. at 498. Further, the stop must be "reasonably related in scope to the justification for [its] initiation." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

First, Defendant's stop was justified at its inception, the officers had reasonable suspicion that she was under the influence when she was involved in the auto accident. The officers smelled the alcohol on her breath and observed characteristics of someone who was under the influence. The evidence was further supported by Defendant's supervisor who independently commenced an administrative investigation based on the incident. Second, the stop was reasonable in scope. As noted above, the police only did that which was reasonably necessary to carry out the investigation.

D.   The Arrest was Legal

By the time Defendant was arrested, there was probable or reasonable cause to believe she had driven under the influence. The facts that supported reasonable suspicion described above, together with the evidence that she failed the field sobriety test, the preliminary alcohol test results and her admission that she drove the subject vehicle which appeared to be involved in the parking lot accident constituted probably cause justifying the arrest. Moreover, she was given a Miranda warning promptly after being placed under arrest.

///
///
///
///
///

## II. CONCLUSION

For the above reasons, Defendant's motion to suppress is **DENIED**. As status conference in this case will be held before this Court on November 18, 2009 at 9:30 a.m.

This order disposes of Docket Nos. 8 and 10.

IT IS SO ORDERED.

Dated: October 30, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

7